

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00268-CV

**IN THE INTEREST OF R.R. AND S.M.R.**, Children

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-PA-00858
Honorable Richard Garcia, Judge Presiding

Opinion by:   Jason Pulliam, Justice

Sitting:   Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  September 14, 2016

AFFIRMED

### INTRODUCTION

In this accelerated appeal, Ruben R. appeals the trial court's order terminating his parental rights to his children, R.R. and S.M.R.[1]  In his sole issue on appeal, Ruben R. asserts the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interest.  We affirm the trial court's order of termination.

---

[1] To protect the identity of minor children, we refer to the children by their initials and to appellant as Ruben R.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).  Although the trial court terminated both parents' parental rights to R.R. and S.M.R., Ruben R., their father, is the only parent to appeal the trial court's judgment.  The termination proceedings also involved another child, A.A.V., who had a father other than Ruben R.  This father does not appeal termination of his rights.  Therefore, this court will only discuss the trial court's judgment as it pertains to Ruben R.

**BACKGROUND**

This case began on April 23, 2015, when the subject children's mother brought them to an office of the Department of Family and Protective Services ("the Department") and reported that she was unable to care for them, did not have a place to go or live, and did not have family to support or house her. The children's mother asked that the Department take her children, R.R., S.M.R. and A.A.V. At the time, R.R. was five years old, S.M.R. was three years old, and A.A.V. was nine months old. The Department confirmed that no shelters or facilities were able to take the three children and their mother, so the Department took the children into their care. At the time the children were taken into care of the Department, Ruben R. was incarcerated for transportation of undocumented persons.

Following investigation, on April 27, 2015, the Department filed a petition for protection of a child, for conservatorship, and for termination of parental rights. Following a hearing on May 19, 2015, the Department was designated the children's temporary managing conservator. Ruben R. was represented by counsel at the hearing but was not present or otherwise in attendance. The court designated a family service plan under which Ruben R. was required to complete several programs for reunification, including counseling, parenting classes and drug testing. Ruben R. was not allowed visitation.

The trial court held several hearings, during which the goal of the service plan was reunification. Ruben R. was released from jail on December 4, 2015; however, he was re-incarcerated on February 26, 2016, due to failure to report to his parole officer, a parole violation. The Department changed the service plan goal to termination of parental rights due to Ruben R.'s re-incarceration. Trial was held on April 11, 2016.

Following presentation of evidence, the trial court terminated Ruben R.'s parental rights and named the Department permanent managing conservator of the children. The trial court found

Ruben R.: (1) constructively abandoned the children, pursuant to Family Code § 161.001(1)(N); and (2) failed to comply with the court-ordered family service plan, pursuant to Family Code § 161.001(1)(O). *See* TEX. FAM. CODE ANN. § 161.001(1)(N) and (O) (West Supp. 2015). The trial court also found termination of Ruben R.'s parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(2). Ruben R. perfected this appeal.

## ANALYSIS

On appeal, Ruben R. challenges the sufficiency of the evidence to support the trial court's best-interest finding. Ruben R. contends the Department's basis of the best-interest determination, that is, the children needed to move forward with permanency and were thriving in the foster home, was insufficient basis to establish that termination is in the children's best interest.

### Best Interest of the Child

#### *Standard of Review*

To terminate parental rights pursuant to Section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1); and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2); *In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Both elements must be established, and termination may not be based solely on the best interest of the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Because a parent's right to the companionship, care, custody, and management of children is a constitutional interest "far more precious than any property right a judgment terminating parental rights must be supported by clear and convincing evidence." TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). Due process demands

this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *Holick*, 685 S.W.2d at 20; *see In the Interest of J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification of conservatorship order).

Consequently, termination proceedings must be strictly scrutinized, and "involuntary termination statutes are strictly construed in favor of the parent." *Holick*, 685 S.W.2d at 20. To determine if the heightened burden of proof was met, an appellate court must employ a heightened standard of review—judging whether a "factfinder could reasonably form a firm belief or conviction about the truth of the [Department's] allegations." *In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role. *Id.* at 25-26. An appellate court must not reweigh issues of witness credibility but "'must defer to the [factfinder's] determinations so long as those determinations are not themselves unreasonable.'" *In the Interest of J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

*Sufficiency of the Evidence Review*

Under the strict scrutiny implicit in termination cases and the necessity of clear and convincing evidence, the traditional legal and factual standards of review are inadequate. *In the Interest of J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Instead, in conducting a legal sufficiency review of termination of parental rights, an appellate court must view all of the evidence in the light most favorable to the finding and determine whether a reasonable factfinder could have formed a firm belief or conviction that its ultimate findings are true. *See id.* at 266. In viewing the evidence in the light most favorable to the judgment, the appellate court "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have

been incredible." *Id.* However, the appellate court may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the Department's heightened burden of proof by clear and convincing evidence. *Id.* If, after conducting its legal-sufficiency review of all the evidence, a court determines no reasonable factfinder could form a firm belief or conviction consistent with the final judgment, then the court must conclude the evidence is legally insufficient. *Id.*

When reviewing a factual sufficiency challenge, the analysis is somewhat different in that the appellate court must consider all of the evidence equally, including disputed and conflicting evidence. *In the Interest of J.F.C.*, 96 S.W.3d at 266. The appellate court must determine whether the disputed evidence is such that a reasonable fact finder could have formed a firm conviction or belief about the truth of the Department's allegations. *Id.* In doing so, the appellate court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so and disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* Finally, in its analysis of this evidence the appellate court should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* The appellate court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.*; *In the Interest of A.S.*, 261 S.W.3d 76, 82 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

*Best Interest Finding*

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In the Interest of R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, this presumption must be balanced with consideration that "the prompt and permanent placement of the child in a safe environment is

presumed to be in the child's best interest." TEX. FAM. CODE § 263.307(a) (West Supp. 2015). To promote this balancing of presumption and consideration of the child's best interest, in determining whether a child's parent is willing and able to provide the child with a safe environment, the court should consider the non-exhaustive factors outlined in *Holley v. Adams* to shape their analysis of the best interest of the child. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* at 372. In analyzing these factors, a court must focus on the best interest of the child, not the best interest of the parent. *In the Interest of D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Finally, evidence that proves one or more statutory grounds for termination may be probative of both termination grounds and best interest; however, such evidence does not relieve the Department of its burden to prove best interest. *Holley*, 544 S.W.2d at 370; *see also In the Interest of C.H.*, 89 S.W.3d at 28. A best-interest analysis may consider circumstantial evidence, subjective factors and the totality of the evidence, as well as any direct evidence. *In the Interest of E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). A trier of fact may measure a parent's future conduct by their past conduct and may infer that past conduct

endangering the well-being of a child may recur in the future if the child is returned to the parent. *Id.*; *In the Interest of B.K.D.*, 131 S.W.3d 10, 17 (Tex. App.—Fort Worth 2004, pet. denied). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In the Interest of D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) (quoting *In the Interest of R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

*The Evidence*

To establish basis for termination and the best-interest finding, the Department relied upon testimony of three witnesses: Ruben R.; Edward Gentry, the Department's first caseworker when it took possession of the children; and Mildred Hohensee, the Department's caseworker once temporary orders were granted.

Ruben R., who attended and testified via telephone conference, testified that he had not complied with the service plan during his two and one-half month release from incarceration because he "didn't have time to" and because he had nowhere to live and was "trying to get things together". Ruben R. testified he saw the children once in December and once in January during his release. At the time of trial, Ruben R. did not know yet how long he would remain incarcerated, but it could be up to fifteen months. Ruben R. testified he didn't necessarily want the children to live with him, but just wanted to have some contact and "a relationship with the children because I don't want them later on to say that my dad left me, like their mother left them, you know, because I'm not—I love them, you know." Ruben R. testified he provided for and raised the children prior to his incarceration on July 24, 2013, at which time they were three years old and one and one-half years old.

Edward Gentry testified regarding the unusual circumstances in which the children came into the Department's care. Mr. Gentry testified he sent Ruben R. paperwork regarding removal

of the children and how to contact the Department, and he had no contact with Ruben R. during the time of his involvement.

Mildred Hohensee, the Department's caseworker, testified that during the time of his release, she gave Ruben R. some referrals to some programs required in his family service plan; however, he did not attend any meetings. Ms. Hohensee stated Ruben R. told her he missed his visitation with the children in February because he had not gone to see his parole officer. Ms. Hohensee stated she believed termination was in the children's best interest because "both of these children are old enough to know what's going on and they are very, very happy at the home they are in and progressing very well. I just–I feel like with the instability, the inability to do what the Court has required, it's just not–it's demonstrating to me the lack of desire within them. And I see how happy they are at the foster home and how successful they are becoming." She also stated it would not be in the children's best interest to have Ruben R.'s "parental rights tied up" during his fifteen-month incarceration.

Ms. Hohensee then testified regarding the health and status of the children, indicating they do not have any medical or mental concerns, are "on track, education wise", have no developmental delays, and are thriving in the foster home in which they are placed with their step-brother A.A.V. and the family's two sons. Ms. Hohensee testified the foster family wanted to adopt the children and had taken care of S.M.R.'s medical needs when she received cancer treatment on her eye.

*Application*

With the standard of review in mind, we review the evidence as it pertains to the *Holley* factors. *See Holley*, 544 S.W.2d at 371-72. We also consider the acts or omissions found by the trial court under section 161.001(b)(1) of the Code, as well as the circumstantial evidence, any

subjective factors, and the totality of the evidence. *See In re R.S.D.*, 446 S.W.3d 816, 820 (Tex. App.—San Antonio 2014, no pet.).

### 1. Desires of the Child

At the time of trial, the children were six and four years' old, and therefore unable to express their desires regarding conservatorship. *See Holley*, 544 S.W.2d at 371-72. However, in this regard, the trial court could consider testimony regarding their current placement and the time spent with their biological family. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Ms. Hohensee testified the children are bonded with their foster family and are happy and content in the home. The evidence establishes that Ruben R. has had very limited contact with the children since his incarceration on July 24, 2013. The evidence shows Ruben R. took no action that would indicate his desire to maintain a parenting relationship with the children, but instead stated he did not necessarily want the children to live with him, but just wants to have a relationship with them. Ruben R. admitted he had two and one-half months to participate in programs to regain custody of the children, but failed to do so.

### 2. Emotional & Physical Needs/Emotional & Physical Danger

As noted, the children were young at the time of trial, and therefore, their age rendered them vulnerable if parental rights remained with a parent who is unable or unwilling to attend to their needs. *See Holley*, 544 S.W.2d at 371-72; *In re J.G.M.*, No. 04–15–00423–CV, 2015 WL 6163204, at *3 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem op.). The children's need for emotional and physical support will continue for many years. *See Holley*, 544 S.W.2d at 371-72.

Ruben R. testified he is not necessarily interested in having the children live with him in a family setting and admitted he did not pursue compliance with the family service plan during his

release from incarceration. Moreover, at the time of trial, Ruben R. was incarcerated and faced up to fifteen months incarceration due to his parole violation.

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.— Fort Worth 2004, pet. denied)). Although incarceration by itself will not justify termination, a parent's recurrent criminal acts may constitute sufficient evidence of conduct that endangers a child and a court may consider it in determining the best interest of the child. *Id.*; *M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth, 2007, no pet.).

Under these facts, Ruben R.'s inability to maintain a lifestyle free from criminal activity would place the children in emotional and physical danger. *See M.R.*, 243 S.W.3d at 821 (holding evidence of parent's unstable lifestyle can support fact finder's conclusion that termination is in child's best interest). The evidence of re-incarceration portends future instability and uncertainty in his ability to attend to the children's needs in the foreseeable future. *See In the Interest of B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.) (holding a fact finder may judge parent's future conduct by past conduct in determining whether termination is in child's best interest).

### 3. Parenting Abilities/Available Programs

The evidence set out above is also relevant to Ruben R.'s inability and reluctance to properly parent. Ruben R. did not participate in the family service plan programs during his release despite having been advised that completion of services was necessary to obtain reunification with his children. *See C.H.*, 89 S.W.3d at 28 (holding proof of acts or omissions under section 161.001(b)(1) is probative of best interests); *B.R.*, 456 S.W.3d at 615 (same). Ruben R. failed to comply with the conditions of parole to remain out of jail. *See Holley*, 544 S.W.2d at 371-72.

This evidence establishes that despite being referred to available programs during his release, Ruben R. chose not to engage. *See Holley*, 544 S.W.2d at 371-72. Based on the evidence showing Ruben R.'s failure to participate in the available programs and services, he has demonstrated a lack of motivation to improve his parenting abilities or lifestyle choices. *See In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.) (holding trier of fact could have formed firm belief that parent was not motived to improve parenting abilities given failure to avail herself of programs provided).

*4. Plans for Child by Those Seeking Custody/Stability of Home or Proposed Placement*

Ms. Hohensee testified the children are currently in a "foster to adopt home" with their half-brother A.A.V. She stated they have bonded with the family, and the foster parents have expressed a desire to adopt all three children.

Ruben R.'s lack of stability is set forth in our discussion above. The evidence shows he is currently incarcerated. Ruben R. admitted that at the time of trial he could not care for the children and had no real desire to care for them other than to maintain a relationship with them. Ruben R. did not offer any other family members that could be a potential home for the children.

*5. Acts or Omissions Indicating Parent–Child Relationship Not Proper/Excuses*

The evidence of acts or omissions by Ruben R. that indicate he had an improper relationship with the children are those set forth above in our discussion of his acts that physically and emotionally endangered the children—incarceration, lack of demonstration of parenting abilities, as well as his failure to complete the service plan requirements during his release.

**CONCLUSION**

The evidence shows the relevant *Holley* factors weigh heavily in favor of a finding that termination was in the children's best interest. Accordingly, recognizing that in conducting a best interest analysis, the trial court was permitted to (1) consider circumstantial evidence, subjective

factors, and the totality of the evidence, in addition to the direct evidence presented, and (2) judge Ruben R.'s future conduct by his past conduct, we hold the trial court did not err in finding termination of Ruben R.'s parental rights would be in the children's best interest. *See B.R.*, 456 S.W.3d at 616. In other words, we hold the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in the children's best interest. *See J.P.B.*, 180 S.W.3d at 573.

Based on the foregoing, we hold the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to find termination was in the children's best interest. Accordingly, we overrule Ruben R.'s sufficiency complaints, hold the trial court did not err by terminating Ruben R.'s parental rights, and affirm the trial court's termination order.

Jason Pulliam, Justice